**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Bryan Simons, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 8:11-cv-03180-JMC |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Wal-Mart Stores East, L.P., and ) | |
| Bank of America, N.A., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Defendant Bank of America, N.A.'s (Bank of America) Motion To Dismiss Count II (Negligence) [Dkt. No. 29] in Plaintiff Bryan Simons's [Simons] Second Amended Complaint [Dkt. No. 27]. For the reasons discussed below, the court denies the motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Simons maintained a checking account with Bank of America. Upon his move from Columbia, South Carolina, to Hopkins, South Carolina, in September of 2004, Simons requested that Bank of America issue him new checks with his new address printed on them and mail those checks to his new address in Hopkins. Bank of America mistakenly printed the checks with Simons's former Columbia address and mistakenly mailed the misprinted checks to his Columbia address. Simons claims that he first learned that his checks had been misprinted and mistakenly delivered to the wrong address in October of 2004.

On or about November 1, 2004, Simons learned from the Lexington County Sheriff's Department that there were six (6) outstanding warrants for his arrest on charges

of issuing fraudulent checks. Simons claims that he notified Bank of America about the issuance of the fraudulent checks, and that Bank of America agreed not to honor any of the stolen checks or hold Simons responsible in the event another party used any of the other misdelivered checks. Bank of America also provided Simons with an Affidavit of Forgery to submit to the Lexington County Sheriff's office. Lexington County subsequently dropped the charges when they received reports of the stolen checks.

Between October 12, 2004, and October 20, 2004, a person identifying himself as David H. Montgomery and using a South Carolina driver's license bearing that name presented three of Simons's misprinted checks to Wal-Mart for the payment of goods and services. When Wal-Mart presented these checks to Bank of America for payment, Bank of America declined payment and returned the checks to Wal-Mart marked either "Refer to Maker" or "Stop Payment." Bank of America allegedly failed to notify Wal-Mart that the checks were forgeries. Simons claims he was not made aware of these fraudulent checks either.

In March of 2005, a Wal-Mart employee signed three (3) affidavits stating that Simons had issued the three fraudulent checks. Based on these affidavits, warrants were issued for Simons's arrest. Simons was arrested on September 17, 2010, while he was being treated at the hospital following a car accident. Upon release from the hospital, Simons was taken to the Newberry County Jail where he was detained overnight. He was released the next day. At Simons's criminal trial for check fraud, he was found not guilty on all charges.

Simons subsequently filed the current action against Wal-Mart and Bank of America seeking damages for public humiliation suffered as a result of his false arrest,

loss of income, and the cost of defending the false accusations against him. Simons's Second Amended Complaint states claims against Bank of America for negligence (Count II) and breach of contract (Count III). In its motion currently before the court, Bank of America seeks dismissal of Simons's negligence claim on the grounds that its actions were not the proximate cause of Simons's injuries due to the intervening acts of others; that Simons's claim is barred by the economic loss rule; and that Simons's claim is essentially a negligent enablement of imposter fraud action, which is not a recognized tort in South Carolina.

## STANDARD OF REVIEW

For a complaint to survive a motion to dismiss, the Federal Rules of Civil Procedure require that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and the grounds upon which it rests," *Twombly,* 550 U.S. at 555 (internal citations omitted). Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of

3

'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 327 (4th Cir. 1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### A. Proximate Cause

To recover for negligence, a plaintiff must show: (1) the existence of a duty, (2) a breach of that duty by the defendant, (3) an injury, and (4) proximate cause. *See Bullard v. Ehrhardt,* 283 S.C. 557, 324 S.E.2d 61 (1984). Negligence is not actionable unless it is the proximate cause of the injury. *Bishop v. S. Carolina Dept. of Mental Health*, 331 S.C. 79, 88, 502 S.E.2d 78, 83 (1998). Proximate cause requires proof of both cause in fact – that the injury would not have occurred but for the defendant's negligence – and legal cause, which requires proof that the injury was foreseeable. *Oliver v. S. Carolina Dept. of Highways & Pub. Transp.*, 309 S.C. 313, 316, 422 S.E.2d 128, 130-31 (1992). Establishing foreseeability requires an inquiry into "the natural and probable

4

consequences of the complained of act." *Bishop*, 331 S.C. at 89, 502 S.E.2d at 83 (citing *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994)).  The defendant's negligence need not be the sole proximate cause of the injury, but the plaintiff must prove that defendant's negligence was at least one of the proximate causes of the injury.  *Id.*

"The intervening negligence of a third person will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care." *Bishop*, 331 S.C. at 89, 502 S.E.2d at 83 (1998).  Here again, the issue is one of foreseeability; "where the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in light of the attendant circumstances," then the defendant is not absolved of its liability.  *Id.*

Foreseeability is also crucial to the proximate cause analysis in situations where the intervening act is criminal in nature.  "The general rule is 'that when, between negligence and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person producing the injury, but that such was not intended by the negligent person and could not have been foreseen by him, the causal chain between the negligence and the accident is broken.'"  *Cody P. v. Bank of Am., N.A.*, 395 S.C. 611, 620-21, 720 S.E.2d 473, 478 (Ct. App. 2011), *reh'g denied* (Dec. 12, 2011) (*quoting Stone v. Bethea,* 251 S.C. 157, 162, 161 S.E.2d 171, 173–74 (1968)).  The negligent party is not expected to foresee unpredictable events.  *Shepard v. S.C. Dep't of Corr.,* 299 S.C. 370, 375, 385 S.E.2d 35, 37 (Ct. App. 1989).  Further, the actor need not have "contemplated the particular chain of events that occurred, but only that the injury at the hand of the intervening party was within the general range of consequences which any

reasonable person might foresee as a natural and probable consequence of the negligent act." *Id*.

Bank of America contends that it could not have reasonably foreseen that in sending Simons's checks to his old address, the checks would fall into the hands of a thief and that Simons would later be arrested and tried for the fraudulent issuance of those checks. Bank of America further asserts that it could not have foreseen that Wal-Mart employees would accept checks as payment from a person bearing a different name than the one printed on the checks and further, that a Wal-Mart employee would wrongly identify Simons as the person who issued those checks. Bank of America argues that either act or the combined effect of both acts is sufficient to break the chain of causality between its negligent acts and Simons's injuries.

At this early stage in the litigation, whether Bank of America could have foreseen the intervening criminal act or the intervening negligent acts of Wal-Marts' employees is a factual question. Further factual development could demonstrate that Bank of America could have anticipated a scenario like the one presented here. Alternatively, additional facts may demonstrate that similar scenarios are "sufficiently rare" such that Simons's injuries "cannot be considered the 'natural and probable consequences'" of Bank of America's alleged acts and omissions. *Hill, By & Through Covington v. Briggs & Stratton*, 856 F.2d 186 (4th Cir. 1988). As a result, the court cannot rule out Bank of America's negligence as a proximate cause of Simons's injuries.

### B. The Economic Loss Rule

The economic loss rule bars a negligence action "where duties are created *solely* by contract." *Eaton Corp. v. Trane Carolina Plains*, 350 F. Supp. 2d 699, 701 (D.S.C.

6

2004) (emphasis in original) (citing *Kennedy v. Columbia Lumber and Mfg. Co., Inc.,* 299 S.C. 335, 384 S.E.2d 730, 737 (1989)).  This rule developed in products liability law[1], and its purpose is to "define the line between recovery in tort and recovery in contract."  *Sapp v. Ford Motor Co.*, 386 S.C. 143, 147, 687 S.E.2d 47, 49 (2009).  The rule states that:

> Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic losses." Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract. This is so, ... because his losses are more than merely "economic."

*Eaton,* 350 F. Supp. 2d 699, 701-02 (emphasis in original) (quoting *Kennedy,* at 345, 384 S.E.2d at 736)). Therefore, when personal injury results from a breach of a contractual duty, tort liability may be appropriate.  *Sapp,* 386 S.C. at 147, 687 S.E.2d at 49 (2009). Additionally, where the alleged tortfeasor acts "in such a way that he violates a contractual duty *only,* then his liability is only contractual [but] [i]f he acts in a way as to violate a legal duty . . . his liability is both in contract and in tort."  *Kennedy at* 345, 384 S.E.2d at 737.

The economic loss rule does not bar Simons's negligence claim for three reasons. First, the injuries for which Simons seeks recovery – specifically, pain and suffering and

---

[1] It is not clear whether South Carolina law would apply the economic loss rule to services contracts such as those between banks and their customers.  *See Eaton*, 350 F. Supp. 2d at 703 (discussing this unresolved issue and citing cases from other states that have held "that if the contract is one for services, the economic loss doctrine does not apply, and a negligence claim is permissible.").

7

loss of freedom – are physical, not economic injuries.[2]  Therefore, Simons's allegations of physical injury as a result of Bank of America's negligence preclude the application of the economic loss rule.

Second, Simons has alleged that Bank of America failed to comply with professional and industry standards when it mailed checks to the wrong address and when it failed to provide Wal-Mart with an appropriate explanation regarding the dishonored checks.  South Carolina courts have held that the economic loss rule may not bar recovery in tort where a plaintiff is injured as a result of the defendant's failure to meet professional or industry standards.  *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 55, 463 S.E.2d 85, 88 (1995) (finding design processional may be liable in tort because of duties owed separate and distinct from their contractual duties); *see also, e.g.*, *Mitchell v. Holler,* 311 S.C. 406, 429 S.E.2d 793 (1993) (legal malpractice); *Beachwalk Villas Condominium Ass'n v. Martin,* 305 S.C. 144, 406 S.E.2d 372 (1991) (architect liability).  At this stage of the litigation, the fact that Simons has not identified a particular industry standard does not prevent him from exploring the existence and possible breach of such standards.  *See Eaton*, 350 F. Supp. 2d at 703 (holding that a plaintiff's failure to identify a specific industry standard did not

---

[2] Bank of America argues that Simons fails to argue that his false arrest and prosecution were foreseeable results of Bank of America's negligence. Bank of America further argues that Simons's failure to include this claim in his Second Amended Complaint, even though it was in its first complaint, is proof of Simons's abandonment of the claim. [Dkt. No. 27].  The court is not convinced that this amounts to an abandonment of Simons's claim since, later in the complaint, Simons claims that Bank of America's negligence was the "direct, proximate, and or contributing cause of the injuries and damages suffered by the Plaintiff." *See* Second Amended Complaint [Dkt. No. 27 at 9].

8

warrant a grant of summary judgment for defendant before the expiration of the discovery period).

Finally, Simons alleges that Bank of America explicitly assured him[3] that he would not be held responsible for the fraudulent checks. The economic loss rule does not bar tort claims where a defendant voluntarily assumes a duty to use due care over and above the duty required by the contract. *See Hendricks v. Clemson Univ.*, 353 S.C. 449, 457, 578 S.E.2d 711, 714 (2003) (citing *Russell v. City of Columbia,* 305 S.C. 86, 406 S.E.2d 338 (1991)). In such situations, that duty does not arise as a result of the contract, and therefore, the economic loss rule would not bar Simons's negligence claim. As a result, Simons's allegation that Bank of America made promises beyond those contained in their contract precludes the applicability of the economic loss rule at this time.

For these reasons, the economic loss rule does not present a bar to Simons's negligence claim at this stage of the litigation.

### C.  Negligent Enablement of Imposter Fraud

Bank of America asserts that Simons's claim is essentially one sounding in the tort of negligent enablement of imposter fraud because Simons is attempting to hold Bank of America responsible for negligently enabling an imposter to issue fraudulent checks. Simons does not specifically allege this tort and argues that the typical negligent enablement of imposter fraud case is materially distinguishable from the case at hand.

The South Carolina Supreme Court has held that the tort of negligent enablement of imposter fraud is not recognized in South Carolina. *Huggins v. Citibank, N.A.*, 355

---

[3] In Simons's Opposition to Bank of America's Motion to Dismiss, he alleges that Bank of America "expressly promised . . . that they would 'take care' of any fraudulent checks presented on his account." [Dkt. No. 33 at 9]. This explicit statement is not alleged in the complaint.

S.C. 329, 334, 585 S.E.2d 275, 278 (2003).  In that case, a plaintiff brought a negligence action against banks that issued a credit card in Huggins name to an unknown imposter. *Id.* at 331, 585 S.E.2d at 276.  The imposter then used the credit cards leaving the plaintiff with the accrued debt and a damaged credit history.  *Id*.  The United States District Court for the District of South Carolina certified the question to the South Carolina Supreme Court of whether South Carolina recognized the tort of negligent enablement of imposter fraud.  The South Carolina Supreme Court determined that there was "no duty on the part of credit card issuer to protect potential victims of identity theft" and as a result, no negligence cause of action available in South Carolina for such claims. *Id.* at 334, 585 S.E.2d at 278.

Simons rightly argues that *Huggins* is distinguishable primarily because the banks in that case played no role in facilitating the imposter's access to the plaintiff's personal financial information.  In the present case, Bank of America's negligence allegedly allowed the fraudfeasor to come into possession of Simons's checks.  Additionally, the plaintiff in that case was not a customer of the banks that issued the credit card.  In this case, Bank of America clearly owed a duty to Simons as its customer.  For these reasons, the negligence action sought here is distinguishable from the *Huggins* case.  As a result, Simons's claims are not barred by the holding in *Huggins*.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Bank of America's Motion to Dismiss Count II (Negligence) [Dkt. No. 29].

**IT IS SO ORDERED.**

United States District Judge

January 31, 2012
Greenville, South Carolina